NO SUMMONS ISSUED

UNITED STATES DISTRICT COURT
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------
PHILLIP COX,

CV 13

163

Plaintiff,                **COMPLAINT**

      -against-                **JURY TRIAL**
                                              **DEMANDED**

THE CITY OF NEW YORK, POLICE OFFICER
JASON ZUMMO, TaxReg# 939739, an unknown Police Officer
and unknown Sergeant Police Officer of the 113th Precinct,      ECF CASE
together with unknown Detectives of the 109th Precinct, and
unknown Correction Officers or Employees in their
individual capacities and in their official capacities
as employees of the City of New York,

                      Defendants.
-------------------------------------------------------------X

      Plaintiff, Phillip Cox, by his attorney, Kavin L. Edwards, Esq., alleges the

following for this Complaint:

### NATURE OF THE ACTION

      1.    This is a civil rights action for money damages brought pursuant to 42

U.S.C. §§ 1983 and 1988, for deprivation of Plaintiff's rights under the Fourth, Fifth, and

Fourteenth Amendments of the United States Constitution, Article 1, Sections 6 and 12 of

the New York State Constitution, and laws of the State of New York, against the City of

New York, New York City Police Officer Jason Zummo, and unknown New York City

Police Officers and Detectives, police officers of the City of New York, and unknown

New York City Corrections Officers or employees, correction officers or employees of

the City of New York, in their individual capacities and official capacities. Plaintiff

seeks compensatory and punitive damages, affirmative and equitable relief, an award of

attorney's fees and costs, and such other relief as this Court deems equitable and just.

## JURISDICTION

2.      This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 (3) and (4).  Plaintiff also asserts jurisdiction over the City of New York under 28 U.S.C. § 1331 and § 1367.

## VENUE

3.      Under 28 U.S.C. § 1391(b), venue is proper in the Eastern District of New York because the events forming the basis of Plaintiff's complaint occurred in that District.

## NOTICE OF CLAIM

4.      On January 10, 2012, plaintiff Phillip Cox filed a Notice of Claim upon defendant City of New York, by delivering copies thereof to the person designated by law as a person to whom such claim may be served.

5.      Plaintiff's Notice of Claim was in writing, sworn to by Plaintiff, containing his name and address, and the name and address of his attorney.

6.      The Notice of Claim set out the nature of the claims, the time when, the place where, and manner by which the claims arose, and the damages and injuries claimed to have been sustained by Plaintiff.

7.      The City of New York has failed to adjust the claims for Plaintiff within the statutory time period.

8.      This action is being commenced within one year and ninety days after the happening of the event upon which the claims are based.

## PARTIES

9.     Phillip Cox ("Plaintiff") is a citizen of the United States and, at all times relevant to the claims arising herein, was a resident of the State of New York.

10.     At all times relevant to this complaint, defendant Police Officer Jason Zummo ("defendant Zummo"), unknown Police Officers, unknown Sergeant Police Officer ("SPO") unknown Detectives (together "defendant Officers" and or "defendant Detectives") and unknown Correction Officers or employees were duly appointed and acting police officers of the New York City Police Department or acting correction officers of the New York City Correction Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York, the City of New York, the New York City Police Department and or the New York City Correction Department.

11.     Sergeant Police Officer is a white male, approximately thirty-five to forty (35-40) years old, about six foot two inches tall (6'2") and two hundred thirty to two hundred forty (230-240 lbs.) pounds who was working out of the 113th Police Precinct on or about October 15, 2011.

12.     One unknown Police Officer was a white male, approximately five foot nine (5'9") with a slender build, who was working out of the 113th Police Precinct on or about October 15, 2011. Plaintiff is not sure whether this officer was his arresting officer, who he later learned to be Jason Zummo, TaxReg# 939739.

13.     Another one of the unknown Police Officers was a white male, approximately five foot nine (5'9") or five ten (5'10") a with sort of heavy build, who was working out of the 113th Police Precinct on or about October 15, 2011.

3

14.     The unknown Detectives are two white male officers who were working out of the 109th Precinct's robbery and home invasion unit, on or about October 16, 2011.

15.     The unknown Correction Officers or employees are various corrections officers or employees who were working on Rikers Island, during the time and in the housing unit where Plaintiff was incarcerated, between November 17, 2011 and November 27, 2011, who refused to allow Plaintiff and others to post Plaintiff's $1.00 bail.

16.     Defendant City of New York is a Municipal Corporation duly incorporated and existing pursuant to the laws of the State of New York, pursuant to Section 431 of its Charter. The City of New York has established and maintains a Police Department and Correction Department as constituent departments or agencies of defendant City of New York.

17.     At all relevant times, the City of New York and its Police Department or Correction Department employed all of the individual defendants.

18.     At all relevant times, all of the individual defendants were agents, servants, and employees of the City of New York acting within the scope of their employment by defendant City of New York and its Police Department or Correction Department.

## FACTS

19.     On October 15, 2011, at approximately 6:45 PM, Plaintiff was returning home in the rear passenger seat of an automobile in the vicinity of Union Hall and South Road in Queens, New York, after dropping off a friend, Alicia Thames, at her residence.

20.     Tracey Thomas, the owner of the vehicle, was having some difficulty finding his way back to Plaintiff's house, so he pulled over and switched seats with Chana Eaton, a professional driver, to allow her to drive Plaintiff home.

21.     Shortly after Chana Eaton pulled off, New York City Police Officers pulled the vehicle over claiming that she failed to signal.

22.     There were three police officers at the scene at the time, PO-1, PO-2, and a sergeant, SPO-3.

23.     The sergeant police officer (SPO-3) asked where the vehicle's occupants, including Plaintiff, were coming from and where they were going.

24.     Defendant Officers told Plaintiff and all occupants of the vehicle to get out of the car and they asked for their names.

25.     Plaintiff was patted down and searched, defendant Officer PO-1 or PO-2, emptied the contents of Plaintiff's pockets on the trunk of the vehicle.

26.     One of the defendant Officers asked Plaintiff whether he was on parole.

27.     Thereafter, one of the defendant Officers, PO-1 or PO-2, told Plaintiff, Chana Eaton and Tracey Thomas to get back into the car.

28.     One of the defendant Officers stated that they had Plaintiff's and each of the occupant's identifications and that they were going to write down that Plaintiff and the occupants had been stopped and that defendant Officers had taken their names.

29.     At this point, one of the defendant Officers decided to check the trunk of the car.

30.     Without asking anyone, defendant Officer reached in from the driver's side and removed the keys.

5

31.     Defendant Officer walked to the rear of the car and opened the trunk.

32.     Next the car doors opened, Plaintiff, sitting in the rear of the vehicle, was grabbed by the defendant Officer with the heavy build and all the occupants were ordered to get out of the car.

33.     Defendant Officers removed everyone, handcuffed Plaintiff and the other occupants and forced them to sit on the curb of the street.

34.     When Plaintiff asked why he was being arrested, he was told shut up, you're being charged for murder.

35.     When Plaintiff asked for the defendant Officers to read him his rights, he was told that's only something that they do in the movies.

36.     Plaintiff was upset, confused and stressed out.

37.     Chana Eaton was asking Tracey Thomas, what's going on?

38.     Defendant Officers waited for additional officers to arrive and two or three additional police vehicles pulled up.

39.     Plaintiff noticed that one of the police vehicles pulled up with a young woman in the back seat, it may have been the fourth or fifth police vehicle that arrived.

40.     Plaintiff assumed that maybe someone had robbed or assaulted the young woman and she was there to potentially identify the people that harmed her.

41.     While sitting on the curb, an officer shined the lights from the vehicle on Plaintiff, Chana Eaton and Tracey Thomas so that the woman in the back seat could get a look at them.

42.    Plaintiff sat up, attempting to make sure the woman could see his face, so that she would see that he was not the person that had, he presumed, robbed or assaulted her.

43.    Plaintiff hoped that defendant Officers would be satisfied that Plaintiff was not involved in any robbery or other crime and that he would be able to return to his home.

44.    Plaintiff, however, was not able to go home.

45.    Defendant Officers took Plaintiff and the others to the 113th precinct in separate police vehicles.

46.    While at the 113th Precinct, Plaintiff asked if he could have his phone so that he could get a number out of it, to make one phone call.

47.    An officer at the 113th Precinct asked Plaintiff which phone was his, but never came back and Plaintiff was never given an opportunity to make a phone call.

48.    Plaintiff was placed in a holding cell and when he asked SPO-3, at the 113th Precinct, what he was being charged with, he was told marijuana possession.

49.    The next morning, on October 16th, 2011, Plaintiff was awaken by two detectives from the 109th Precinct and removed to the same.

50.    The entire time that Plaintiff was in the custody of the 113th Precinct, he was never given an opportunity to make a phone call, he was not given anything to eat and he was not given so much as a cup of water.

51.    When Plaintiff arrived at the 109th Precinct, he was immediately handcuffed to a wall in a small room, approximately 6 feet by 9 feet.

52.    One of the officers at the 109th Precinct was kind enough to get Plaintiff a sandwich.

53.    At some point later in the day, Plaintiff was finally given a small cup of water after complaining that he was starving.

54.    Plaintiff was questioned by robbery and home invasion detectives at the 109th Precinct.

55.    A search warrant was obtained to search the home of Plaintiff and it was searched.

56.    Upon information and belief, defendant Officers removed two cell phones and a set of car keys from Plaintiff's residence.

57.    Defendants have not returned Plaintiff's cell phones or the car keys they removed from Plaintiff's residence, although Plaintiff has made attempts to recover the same.

58.    Prior to talking with detectives at the 109th Precinct, Plaintiff believes that he signed a waiver of some sort related to his Miranda rights.

59.    However, at one point during the interrogation of Plaintiff by detectives at the 109th Precinct, Plaintiff requested to speak to a lawyer.

60.    Plaintiff's request to speak to a lawyer was not granted.

61.    While in the custody of the 109th Precinct, Plaintiff asked to make a phone call and was told that he could not because they were still investigating.

62.    Plaintiff was never afforded the opportunity to make a phone call by officers at the 109th Precinct.

63.     Although Plaintiff made several request for food while he was in the custody of the 109th Precinct, he only received one sandwich on the first day that he arrived at the 109th Precinct and a molded piece of pizza days later.

64.     Plaintiff was held in the custody of the 109th Precinct for approximately 3 or 4 days.

65.     At the 109th Precinct, prior to placing Plaintiff in a cell, Plaintiff was placed in a room for about a day and a half where he was handcuffed to a wall.

66.     Plaintiff lost awareness of exactly what time it was while he was in police custody.  While in police custody, and being denied food, Plaintiff felt dizzy, lightheaded and weak.

67.     After several days in custody, with no food or water, at approximately 3 or 4 o'clock in the morning, Tracey Thomas gave a statement implicating him.

68.     After the police got a statement from Tracey Thomas, Plaintiff was given a piece of old, cold pizza to eat.

69.     Plaintiff took a small bite from the crust but then noticed that the pizza appeared to have fungus and mold on it, so he could not eat it. Plaintiff believes this may have been the day he was taken to Central booking, on October 19, 2011.

70.     While Plaintiff was at Central booking he was given a cheese sandwich and milk.

71.     Plaintiff was at Central Booking for at least one night, the following day he was arraigned.

72.     Plaintiff learned at his arraignment that he was being charged with the offenses of Criminal Possession of a Weapon in the 2nd degree, Criminal Possession of a

Weapon in the 3rd Degree, Criminal Possession of Stolen Property in the 4th Degree, Criminal Possession of Marijuana in the 5th Degree, Consumption of Alcohol on Streets, and Consumption of Alcoholic Beverages in Certain Motor Vehicles.

73.    The allegations in the felony complaint against Plaintiff falsely alleged that Plaintiff committed the above offenses by defendant Zummo observing a loose quantity of marijuana on the front passenger floor of the vehicle.

74.    The allegations in the felony complaint against Plaintiff falsely alleged that Plaintiff committed the above offenses by holding an open bottle of brandy in the rear seat of the vehicle open to public view.

75.    There was no loose quantity of marijuana on the front passenger floor of the vehicle for defendant Zummo to observe and reasonably believe was possessed by Plaintiff.

76.    Plaintiff was never in possession of any open bottle of brandy in the rear seat of the vehicle, open to public view, Plaintiff was never in possession of any loose quantity of marijuana on the front passenger floor of the vehicle at any time during his encounter with the defendants.

77.    Plaintiff never committed any of the offenses charged against him in the felony complaint.

78.    At no time during the above-described events did Plaintiff commit any unlawful acts or act in a manner to give the defendants reasonable suspicion or probable cause to seize, search, or arrest Plaintiff.

79.    Defendant Zummo knew that Plaintiff had not committed any unlawful act or any of the offenses charged in the felony complaint, but maliciously initiated a

criminal prosecution against Plaintiff by signing the above-mentioned felony complaint in which it was falsely alleged that Plaintiff committed the above-described offenses.

80.     Plaintiff did not commit any of the offenses that he was charged with or any other offense.

81.     The judge set a bail for Plaintiff of $10,000.00 bond over $10,000.00 cash. Plaintiff was not able to make bail and was sent to a boat for processing.

82.     Plaintiff got to the housing unit at approximately 11:30 PM on October 19th, 2011 and pleaded with a corrections officer to allow him to take a quick shower.

83.     It had been at least four (4) days since Plaintiff was allowed to shower.

84.     While in the shower, Plaintiff noticed a rash on his inner thighs, as a result of not being able to wash for the several days he was held in police custody.

85.     Plaintiff requested some cream to attempt to address the rash he was suffering, but he was told that they do not give out the same because of it being misused.

86.     On October 21, 2011 Plaintiff was sent back to court. At this time the judge ordered Plaintiff released on his own recognizance because the police officers had held him in custody so long that the district attorney's office had failed to present information to a grand jury within the time allotted.

87.     Plaintiff later learned that Police Officer Jason Zummo, TaxReg# 939739, of the 113th Precinct, was the arresting officer and was one of the two officers described above as PO-1 or PO-2.

88.     Plaintiff was arrested a placed in custody at approximately 6:45 PM on October 15, 2011, and Plaintiff remained in police custody until sometime after 6:30 PM on October 21, 2011.

89.    The criminal case against Plaintiff under docket number 2011QN055974 was dismissed by the Supreme Court of the State of New York, Queens County on or about January 5, 2012.

90.    As a result of this arrest, and subsequent imprisonment, Plaintiff suffered extreme hunger, thirst, anger, sleeplessness, difficulty thinking straight, depression, fright of being arrested without cause, being unlawfully imprisoned and maliciously prosecuted.

91.    As a result of this arrest, and subsequent imprisonment, Plaintiff suffered damage to his relationships with his family and the mother of his young twin boys; Plaintiff was placed on psychiatric medication (Remeron 30 mg) while on Rikers Island; Plaintiff has experienced sexual performance issues as a result of taking Remeron, and he had his property stolen from his residence after police executed a search warrant.

92.    In addition, as a result of this arrest, and subsequent imprisonment, Plaintiff was violated by his parole officer and sent to prison from October 25, 2011 through November 27th, 2011.

93.    As a result of this arrest, and subsequent imprisonment, Plaintiff is afraid of the police, he believes that are not here to protect and serve but to lock up innocent people.

94.    Furthermore, although it was determined, at a hearing on November 17th, 2011, that there was no probable cause to believe that Plaintiff had violated the conditions of his release he was nevertheless held until November 27, 2011.

95.    On November 23rd, 2011, the warrant against Plaintiff was lifted, but Plaintiff was nevertheless held for four additional days because no authorized person would allow him to take $1.00 out of his account to post bail.

96.     Those same persons who prevented Plaintiff from posting his own $1.00 bail would not allow other people to post Plaintiff's bail.

97.     It was not until Plaintiff started demanding the names and shield numbers of the people that where holding him, that Plaintiff was finally released on November 27, 2011.

98.     Plaintiff believes the names of the corrections officers who were on duty, that prevented him and or others from posting Plaintiff $1.00 bail can be found by checking the appropriate log books or records of the Department of Corrections or The City of New York.

99.     Plaintiff was required to return to court on at least four (4) occasions, including facing a grand jury, following his arraignment to address the charges falsely lodged against him by defendant Zummo.

100.    Plaintiff was required to return to court on a November 15, 2011 following his arraignment to face a grand jury to address the charges falsely lodged against him by defendant Zummo.

101.    Plaintiff was found not guilty by the grand jury for all offenses he was charged with, with the exception of violating the Vehicle and Traffic Law relating to having an open container of alcohol.

102.    The grand jury set Plaintiff's bail at $1.00.

103.    Plaintiff attempted to post his own bail for $1.00, but the correctional facility would not allow him to do so.

104.    Personnel from the correctional facility, holding Plaintiff, claimed that there was a supporting deposition missing from Plaintiff's flow card and they were scared

to allow Plaintiff to post his bail for fear of losing their job if Plaintiff had other outstanding issues.

105.    Plaintiff had other persons, including, but not limited to, Alicia Thames, attempt to bail Plaintiff out and personnel from the correctional facility asked those persons, how they could prove that they were family, because Plaintiff believes they were afraid of losing their jobs for the above mentioned reasons.

106.    Plaintiff believes that Alicia Thames attempted to post his bail of $1.00 on or about November 17, 2011 and again on or about November 20, 2011, but was unsuccessful.

107.    Plaintiff's friend, Renaldo Cresco, attempted to post Plaintiff's bail of $1.00 on November 23, 2011, November 24, 2011 and at other times, each of which was unsuccessful.

108.    Each time that Plaintiff inquired about and attempted to pay his own bail from his available funds, he was told by personnel at the correctional facility that it's being processed. Plaintiff attempted to post his own bail each day since his bail of $1.00 was set.

109.    However, each time Plaintiff checked his balance on the phone he learned that the $1.00 for his bail had not been taken out of his account. At all times, after Plaintiff's bail was set for $1.00, Plaintiff maintained a balance on his account of over $1.00 and attempted to post bail for himself each day.

110.    Eventually one of the staff at correctional facility told Plaintiff, on November 26, 2011, that nobody would take the $1.00 out of Plaintiff's account because they were afraid of losing their job.

111.    The staff at the correctional facility that informed Plaintiff of the reason why nobody would take the $1.00 from his account was a female, brown skinned African American, approximately five foot nine inches (5'9") tall, working in the housing unit where Plaintiff was being held on Rikers Island.

112.    Plaintiff was released from Rikers Island on November 27, 2011 at approximately 11:30 AM after he was finally allowed to pay his own bail from funds he had on his account.

113.    As a direct and proximate result of the above said acts of the defendants, Plaintiff suffered the following injuries and damages:

    a)    Violation of his constitutional rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, and under Article 1, Section 12 of the New York State Constitution, to be free from an unreasonable search and seizure of his persons;

    b)    Violation of his constitutional rights under the Fifth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 6 of the New York State Constitution, to not suffer the deprivation of his liberty or property without due process of law;

    c)    Physical injury, pain, and suffering from hunger;

    d)    Emotional trauma, distress, and suffering;

    e)    Loss of his physical liberty;

    f)    Loss of personal property.

114.    The actions of the individual defendants violated the following clearly established and well-settled constitutional rights of Plaintiff:

a)      Freedom from the unreasonable search and seizure of his persons;

b)      The right to not suffer deprivation of his liberty or property without due process of law.

## FIRST CAUSE OF ACTION

115.    Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

116.    By way of their above-described actions, each of the defendants, acting under color of law, violated Plaintiff's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

117.    Plaintiff claims damages against each defendant, under 42 U.S.C. § 1983, for the injuries set forth above, caused by the defendants' aforesaid violations of Plaintiff's constitutional rights under color of law.

## SECOND CAUSE OF ACTION

118.    Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

119.    Defendants falsely arrested and unlawfully imprisoned Plaintiff, or caused Plaintiff to be falsely arrested and unlawfully imprisoned, by way of their above-described actions.

120.    Plaintiff claim damages against each defendant, under 42 U.S.C. § 1983, for the injuries set forth above suffered by Plaintiff as a result of his false arrest and unlawful imprisonment.

## THIRD CAUSE OF ACTION

121.    Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

122.    Defendants maliciously prosecuted Plaintiff, or caused Plaintiff to be maliciously prosecuted, by way of defendants' above-described actions.

123.    Plaintiff claim damages against each defendant, under 42 U.S.C. § 1983, for the injuries set forth above suffered by Plaintiff as a result of the malicious prosecution caused by the defendants.

## FOURTH CAUSE OF ACTION

124.    Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

125.    Defendants intentionally inflicted emotional distress upon Plaintiff by way of defendants' above-described actions.

126.    Plaintiff claim damages against each defendant, under 42 U.S.C. § 1983, for the injuries set forth above suffered by Plaintiff as a result of the defendants intentional infliction of emotional distress upon Plaintiff.

## FIFTH CAUSE OF ACTION

127.    Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

128.    Defendants negligently inflicted emotional distress upon Plaintiff by way of defendants' above-described actions.

129.    Plaintiff claim damages against each defendant, under 42 U.S.C. § 1983, for the injuries set forth above suffered by Plaintiff as a result of the defendants negligent infliction of emotional distress upon Plaintiff.

## SIXTH CAUSE OF ACTION

130.   Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

131.   Each of the individual defendants falsely arrested and unlawfully imprisoned Plaintiff, or caused Plaintiff to be falsely arrested and unlawfully imprisoned, by way of defendants' above-described actions.

132.   As a result of these false arrests and unlawful imprisonments, Plaintiff suffered injuries as aforesaid and claims damages for said injuries.

## SEVENTH CAUSE OF ACTION

133.   Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

134.   Defendants maliciously prosecuted Plaintiff, or caused Plaintiff to be maliciously prosecuted, by way of defendants' above-described actions.

135.   As a result of this malicious prosecution, Plaintiff suffered injuries as aforesaid and claim damages for said injuries.

## EIGHTH CAUSE OF ACTION

136.   Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

137.   Defendants intentionally inflicted emotional distress upon Plaintiff by way of defendants' above-described actions.

138.   As a result of this intentional infliction of emotional distress, Plaintiff suffered injuries as aforesaid and claim damages for said injuries.

## NINETH CAUSEOF ACTION

139.    Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

140.    Defendants negligently inflicted emotional distress upon Plaintiff by way of defendants' above-described actions.

141.    As a result of this negligent infliction of emotional distress, Plaintiff suffered injuries as aforesaid and claim damages for said injuries.

## TENTH CAUSE OF ACTION

142.    Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

143.    By way of their above-described actions, each of the defendants, acting under color of law, violated Plaintiff's rights under Article 1, Sections 6 and 12 of the New York State Constitution.

144.    As a result of this violation of Plaintiff's New York State constitutional rights, Plaintiff suffered injuries and claim damages for said injuries.

## ELEVENTH CAUSE OF ACTION

145.    Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

146.    Prior to October 15, 2011, it was the policy and/or custom of defendant City of New York to inadequately and improperly screen individuals applying to become New York City Police Officers, thereby failing to adequately or accurately identify individuals who would be likely to commit constitutional violations against people with whom New York City Police Officers were likely to come in contact or interact.

147.   It was the policy and/or custom of defendant City of New York to inadequately and improperly train and supervise New York City Police Officers, including the individual defendant officers, thereby failing to adequately prevent, discourage, or reduce the possibility of constitutional violations on the part of its police officers.

148.   As a result of the above described policies and customs, defendant City of New York negligently screened, hired, trained, supervised, and retained the individual defendant officers as New York City Police Officers.

149.   Such negligent screening, hiring, training, supervision, and retention were the cause or causes of the violations of Plaintiff's rights alleged herein.

150.   Plaintiff claim damages for the injuries set forth above, under 42 U.S.C. § 1983, against defendant City of New York due to their negligent screening, hiring, training, supervision, and retention of the individual defendant officers, which resulted in the violations of Plaintiff's rights as aforesaid.

## TWELFTH CAUSE OF ACTION

151.   Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

152.   Prior to October 15, 2011, it was the policy and/or custom of defendant City of New York to inadequately and improperly screen individuals applying to become New York City Police Officers, thereby failing to adequately or accurately identify individuals who would be likely to commit constitutional violations against people with whom New York City Police Officers were likely to come in contact or interact.

153.   It was the policy and/or custom of defendant City of New York to inadequately and improperly train and supervise New York City Police Officers, including

the individual defendant officers, thereby failing to adequately prevent, discourage, or reduce the possibility of constitutional violations on the part of its police officers.

154.    As a result of the above described policies and customs, defendant City of New York negligently screened, hired, trained, supervised, and retained the individual defendant officers as New York City Police Officers.

155.    Such negligent screening, hiring, training, supervision, and retention were the cause or causes of the violations of Plaintiff's rights alleged herein.

156.    Plaintiff suffered injuries as set forth above as a result of defendant City of New York's negligent screening, hiring, training, supervision, and retention of the individual defendant officers, and claim damages against defendant City of New York for said injuries.

## THIRTEENTH CAUSE OF ACTION

157.    Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

158.    Prior to October 15, 2011, it was the policy and/or custom of defendant City of New York to inadequately and improperly screen individuals applying to become New York City Correction Officers, thereby failing to adequately or accurately identify individuals who would be likely to commit constitutional violations against people with whom New York City Correction Officers were likely to come in contact or interact.

159.    It was the policy and/or custom of defendant City of New York to inadequately and improperly train and supervise New York City Correction Officers, including the individual defendant officers, thereby failing to adequately prevent,

discourage, or reduce the possibility of constitutional violations on the part of its correction officers.

160.   As a result of the above described policies and customs, defendant City of New York negligently screened, hired, trained, supervised, and retained the individual defendant officers as New York City Correction Officers.

161.   Such negligent screening, hiring, training, supervision, and retention were the cause or causes of the violations of Plaintiff's rights alleged herein.

162.   Plaintiff claim damages for the injuries set forth above, under 42 U.S.C. § 1983, against defendant City of New York due to their negligent screening, hiring, training, supervision, and retention of the individual defendant officers, which resulted in the violations of Plaintiff's rights as aforesaid.

## FOURTEENTH CAUSE OF ACTION

163.   Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

164.   Prior to October 15, 2011, it was the policy and/or custom of defendant City of New York to inadequately and improperly screen individuals applying to become New York City Correction Officers, thereby failing to adequately or accurately identify individuals who would be likely to commit constitutional violations against people with whom New York City Correction Officers were likely to come in contact or interact.

165.   It was the policy and/or custom of defendant City of New York to inadequately and improperly train and supervise New York City Correction Officers, including the individual defendant officers, thereby failing to adequately prevent,

discourage, or reduce the possibility of constitutional violations on the part of its correction officers.

166.   As a result of the above described policies and customs, defendant City of New York negligently screened, hired, trained, supervised, and retained the individual defendant officers as New York City Correction Officers.

167.   Such negligent screening, hiring, training, supervision, and retention were the cause or causes of the violations of Plaintiff's rights alleged herein.

168.   Plaintiff suffered injuries as set forth above as a result of defendant City of New York's negligent screening, hiring, training, supervision, and retention of the individual defendant officers, and claim damages against defendant City of New York for said injuries.

## FIFTEENTH CAUSE OF ACTION

169.   Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

170.   Defendants abused the process of law and abused their authority granted to them as police officers in falsely arresting and falsely charging Plaintiff.

171.   As a result of this abuse of process and abuse of authority, Plaintiff suffered the injuries as aforesaid and claim damages for said injuries.

## SIXTEENTH CAUSE OF ACTION

172.   Paragraphs 1 through 114 of this complaint are incorporated herein by reference as though fully set forth herein.

173.   Defendants intentionally confiscated the cellular phones and keys of Plaintiff, and intentionally refused to return said personal property to Plaintiff.

174.   As a result of this intentional conversion of the above-described personal property of Plaintiff, Plaintiff suffered the injuries as aforesaid and claim damages for said injuries.

## RELIEF

175.   WHEREFORE, based upon all of the above, Plaintiff request that this Court:

a)   Award compensatory damages to Plaintiff against the defendants, jointly and severally, in an amount to be determined by a jury;

b)   Award punitive damages to Plaintiff against the defendants, jointly and severally, in an amount to be determined by a jury;

c)   Award costs of this action to Plaintiff;

d)   Award attorney's fees under 42 U.S.C. § 1988, and costs to Plaintiff;

e)   Award such other and further relief as this Court may deem just and proper.

176.   Plaintiff hereby demands a jury trial.

Dated: January 10, 2013
New York, NY

Kavin L. Edwards
Attorney for Plaintiff
65 Broadway, 8th Floor
New York, New York 10006
212.405.1005
kedwards@kavinedwards.com