UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PHILLIP COX,

                              Plaintiff,

            – against –

THE CITY OF NEW YORK, OFFICER
JASON ZUMMO, OFFICER JAMES
ZOZZRO, OFFICER MATTHEW
VORRAGO, SERGEANT GREG
VALLERUGO, DETECTIVE WILLIAM
BRAVO,

                              Defendants.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  JUL 2 3 2014  ★

BROOKLYN OFFICE

**MEMORANDUM,
ORDER & JUDGMENT**

13-CV-163

**Appearances**

Plaintiff:    Kavin L. Edwards
              The Law Offices of Kavin L. Edwards
              65 Broadway
              New York, NY 10006
              (212) 405-1005

Defendants:   Noreen M. Stackhouse
              New York City Law Department
              100 Church Street
              New York, NY 10007
              (212) 356-2375

**JACK B. WEINSTEIN, Senior United States District Judge:**

I.     Introduction ..................................................................................................................... 3

II.    Facts ................................................................................................................................ 3

       A.    Traffic Stop and Arrest ..................................................................................... 3

       B.    Pre-Trial Custody .............................................................................................. 6

       D.    Violation of Parole ............................................................................................ 8

       E.    Property Recovered from Search of Residence ................................................. 9

III.   Standard of Review .......................................................................................................... 9

IV.    False Arrest ...................................................................................................................... 9

1



    A.  Law ...........................................................................................................................9

        1.  Probable Cause .................................................................................................10

        2.  Permissible Evidence Establishing False Arrest ..............................................10

        3.  Lawful Search Standards ..................................................................................11

        4.  Stop in Front of Hydrant ..................................................................................12

        5.  Open Liquor Container .....................................................................................12

    B.  Application of Law to Facts ..................................................................................13

        1.  Federal False Arrest Claim ..............................................................................13

        2.  State False Arrest Claim ...................................................................................14

V.  Malicious Prosecution ...................................................................................................17

    A.  Law .........................................................................................................................17

    B.  Application of Law to Facts ..................................................................................17

VI.  Municipal Liability ......................................................................................................18

    A.  Law .........................................................................................................................18

    B.  Application of Law to Facts ..................................................................................18

VII.  Intentional Infliction of Emotional Distress ...............................................................19

    A.  Law .........................................................................................................................19

    B.  Application of Law to Facts ..................................................................................19

VIII.  Negligent Infliction of Emotional Distress Claims ....................................................19

    A.  Law .........................................................................................................................19

    B.  Application of Law to Facts ..................................................................................19

IX.  Due Process Claim for Deprivation of Food and Water as a Pretrial Detainee .................20

    A.  Law .........................................................................................................................20

    B.  Application of Law to Facts ..................................................................................21

X.  Intentional Conversion Claim .......................................................................................21

    A.  Law .........................................................................................................................21

    B.  Application of Law to Facts ..................................................................................22

XI.  False Imprisonment – Wrongful Confinement .............................................................22

XII.  Conclusion ...................................................................................................................23

## I. Introduction

Plaintiff sues the City of New York; police officers Jason Zummo, James Zozzaro, and Matthew Vorraro; Sergeant Greg Vallerugo; Detective William Bravo; and unknown Corrections Officers. *See* 42 U.S.C. § 1983.

Phillip Cox was a passenger in the backseat of a car stopped by the police. He was arrested for possession of an alcoholic beverage in a motor vehicle and criminal possession of a weapon. He was subsequently indicted for consumption or possession of alcoholic beverages in a motor vehicle. The indictment was dismissed before he went to trial.

Plaintiff brings federal and state law claims for false arrest, unlawful imprisonment, and malicious prosecution. He also asserts state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, intentional conversion, and denial of adequate food and water while in custody.

Plaintiff was ordered to be present during the July 9, 2014 motion for summary judgment hearing. Because he failed to comply with the court order and did not respond to his attorney's inquiries, his claims are dismissed for failure to prosecute. Fed. R. Civ. P. 41(b). Alternatively, for the reasons stated below, defendants' motions for summary judgment are granted on the merits.

## II. Facts

### A. Traffic Stop and Arrest

About 6:30 p.m. on October 15, 2011, Tracy Thomas arrived at plaintiff Philip Cox's home in a 1996 gold Honda Accord. *See* Stackhouse Decl. in Supp. of Defs.' Mot. for Summ. J., Pl.'s 50H Hr'g Tr., Ex. D, 19:2–20:24, ECF No. 23 ("Pl.'s 50H Hr'g Tr."); Edwards Decl. in Supp. of Pl.'s Opp. Mot. Summ. J., Rule 56.1 Statement ¶ 5, ECF No. 27 ("Pl.'s 56.1"). Shanda

Eaton was sitting in the front passenger seat of the car, and Thomas was driving. *See* Pl.'s 50H Hr'g Tr. at 22:12-16. Plaintiff and Alicia Thames got in the backseat; Thomas drove them to Thames' house to drop her off. *See id.* at 23:2-25.

When Thames got out of the car, she went into a nearby liquor store to buy plaintiff a half-pint bottle of brandy. *See id.* at 59:1-13. She returned to the car, gave plaintiff the bottle and Thomas, Eaton, and plaintiff drove away. *See* Stackhouse Decl. in Supp. of Defs.' Mot. for Summ. J., Tr. Pl.'s Dep., Ex. C, 59:1-13, ECF No. 23 ("Pl.'s Dep."). Plaintiff took a sip from the bottle of brandy while the car was moving. *See id.* at 58: 19-22.

Shortly after driving away from Thames's home, Thomas and Eaton decided to switch seats. *See* Pl.'s Dep. at 60:15-22; Pl.'s 50H Hr'g at 25:9-15. They were on South Road in Queens when Thomas pulled over. *See* Stackhouse Decl. in Supp. of Defs.' Mot. for Summ. J., Crim. Ct. Compl. Ex I., ECF No. 23 ("Crim. Compl."). He parked in front of a fire hydrant to make the switch. *See* Pl.'s Dep. at 60:23-25. Both Thomas and Eaton exited the car in order to change positions. *See* Pl.'s 50H Hr'g at 27:25-28:2.

According to plaintiff, at approximately 6:40 p.m., while the car was parked by the fire hydrant, two police cars pulled up with their overhead lights flashing. *See id.* at 20:17-24. Plaintiff testified that "it was dark out" at the time. *See id.* at 33:19-20. The Court takes judicial notice that sunset on October 15, 2011 was at 6:16 p.m. *See Sunrise/Sunset Calculator*, National Oceanic and Atmospheric Administration (June 7, 2014, 10:05 a.m.), http://www.esrl.noaa.gov/gmd/grad/solcalc/sunrise.html ("NOAA Data").

The arresting officer, defendant Jason Zummo, testified that he noticed the car parked by the fire hydrant at approximately 7:20 p.m. *See* Stackhouse Decl. in Supp. of Defs.' Mot. for Summ. J., Tr. Pre-Trial Test. of Jason Zummo in *The People of the State of New York v. Tracy*

*Thomas*, Indictment No. 2252-11, Ex. F, 3:15-4:11, ECF No. 33 ("Zummo Tr."). While he was watching the car, he saw the two people in the front seats switching places. *See* Mot. Summ. J. Hr'g Tr. 10:8-11. He testified that the car matched a description he had previously received from the Queens Robbery Squad of a wanted tan Honda Accord from the mid-1990s. *See* Zummo Tr. at 5:16-19; 5:21-22. Zummo claims that he saw the car pull away from the curb by the fire hydrant without using a signal indicator. *See id.* at 5:12-14. At that point, he and Defendant James Vorraro did a U-turn and turned on their overhead lights, signaling the Honda to stop. *See id.* at 5:25-6:3. Zummo testified it was "nighttime" and dark at the time of the stop. *See id.* at 28:1-7.

According to Defendant William Bravo, he had had a meeting with 113th Precinct Anti-Crime Team, of which the arresting officer Zummo was a member, on October 13. *See* Edwards Decl. in Supp. of Pl.'s Opp. Mot. Summ. J., Police Logs, Ex. C, 363, ECF No. 28 ("Police Logs"). Bravo stated in his report log that he conveyed information tying the car to the robberies at that time. *See id.* Detective Bravo also made a record in an affidavit dated October 16, 2011 that he identified the suspected car as a tan Honda Accord by reviewing surveillance videotapes of robberies that took place on September 21, 2011 and October 9, 2011. *See* Edwards Decl. in Supp. of Pl.'s Opp. to Summ. J., Bravo Affidavit, Ex. E, NYC 196, ECF No. 23 ("Bravo Affidavit"). At the summary judgment hearing, Officer Zummo testified that during the October 13, 2011 meeting with Detective Bravo, he watched one of the surveillance videos and personally observed the tan Honda Accord as being connected to the robberies. *See* Summ. J. Hr'g Tr. 10:5-7.

After the police stopped the car, Officer Zummo approached the driver's door and spoke to Eaton who was then in the driver's seat. *See* Zummo Tr. at 7:23-24. Officer Zummo testified

that while he was speaking to Eaton, he noticed plaintiff make a movement toward his legs in the backseat. *See id.* at 7:24-8:1. When Officer Zummo looked at the plaintiff, he saw an open bottle of alcohol between his feet on the floor of the car. *See id.* at 8:1-2. Plaintiff admits that the bottle of alcohol was between his feet at the time of the stop, and that he had taken a sip from it prior to the traffic stop. *See* Pl.'s Dep. at 71:16-72:2.

When Officer Zummo and Officer Vorraro subsequently saw what they believed to be marijuana on the floor of the front passenger seat, Officer Zummo asked Thomas to get out. *See* Stackhouse Decl. in Supp. of Defs.' Mot. for Summ. J., Trial Tr. Test. of James Vorraro in *The People of the State of New York v. Tracy Thomas*, Indictment No. 2252-11, Ex. G, 34:17-35:15, ECF No. 34 ("Vorraro Tr."). After frisking Thomas and finding two bags of marijuana in his pocket, they searched the vehicle. *See id.* at 35:10-19; Zummo Tr. at 10:1-11:5. Officer Zummo retrieved an open bottle of alcohol from the floor where plaintiff was sitting, and a loaded handgun from the trunk. *See* Vorraro Tr. at 35:10-36:1. At that point, the officers handcuffed and placed Thomas, Eaton, and plaintiff under arrest. *See* Zummo Tr. at 10:12-15.

### B. Pre-Trial Custody

Plaintiff testified that he was taken to the 113th Precinct and arrived five to ten minutes after leaving the scene of his arrest. *See* Pl.'s Dep. at 86:2-4. He claims that he was not given food or water the entire time he was at the 113th, but acknowledges that there was a water fountain in his cell that he never tried to use. *See id.* at 93:6-11. He stayed at the 113the Precinct until about 8:00 a.m. the next morning, when he was driven to the 109th Precinct. *See id.* at 90:23-25.

Plaintiff was in fact given a sandwich and a diet coke shortly after arriving at the 109th Precinct. *See id.* at 115:11-24. He testified that he was then interviewed on and off for the next

6

24 hours. *See* Pl.'s Opp. at 13. He claims that he was not offered food or drink during that time. *See id.* He stated that at approximately 7:15 a.m. on October 17, 2011—after over 24 hours without food or drink—he was finally offered a slice of old, moldy pizza, which he decided not to eat. *See id.*; Pl.'s Dep. at 105:17-106:1. He testified that shortly after he refused the pizza he was driven to Central Booking, where he received a sandwich and an apple. *See id.* at 108:18-20. He claims to have been held at Central Booking for 12 to 14 hours before he was released on October 18, 2011. *See id.* at 109:1-10. He did not indicate there was a feeding problem after his arriving at Central Booking. *See id.* at 108:16-109:10.

Defendants contend that plaintiff was only at Precinct 109 for 4.5 hours before he was taken to Central Booking, not for the 24 hours he claims. *See* Edwards Decl. in Supp. of Pl.'s Opp. Mot. Summ. J., Command Log, Ex. H, ECF No. 23 ("Command Log"). A Command Log from the 109th Precinct with handwritten notes records plaintiff's being in the precinct from 8:20 a.m. to 12:50 p.m.. *See id.*

### C. Grand Jury Indictment

On October 16, 2011, Officer Zummo signed a criminal court complaint, charging plaintiff, inter alia, with criminal possession of a weapon in the second degree and consumption of alcoholic beverages in a motor vehicle. *See* Crim. Compl.

On December 22, 2011, plaintiff admitted to the grand jury that he consumed alcohol from an open container in a vehicle on October 15, 2011. *See* Pl.'s Dep. at 113:15-21. The grand jury indicted him on December 22, 2011 for one count of consumption or possession of an alcoholic beverage in a motor vehicle. *See* Stackhouse Decl. in Supp. of Defs.' Mot. for Summ. J., Grand Jury Indictment 2252/2011, Ex. K, ECF No. 23 ("Indictment").

All charges against plaintiff stemming from plaintiff's October 15, 2011 arrest were dismissed on January 5, 2012. *See* Stackhouse Decl. in Supp. of Defs.' Mot. for Summ. J., New York County Crim. Ct. Certificate of Disposition No. 22010, Ex. L, ECF No. 23 ("Ct. Certificate").

### D. Violation of Parole

After his release from Central Booking on October 18, 2011, plaintiff reported to his parole officer. *See id.* at 121:1-18. He admits that the incidents leading up to his October 15, 2011 arrest violated the conditions of his parole in that he was associating with Thomas who was a felon and consuming alcohol in an automobile. *See* Pl.'s Dep. at 33:22-34:2. He was arrested for violation of his parole and held on Rikers Island until November 27, 2011. *See id.* at 122:7-8; 132: 6-8.

About November 17, 2011, all parole violations were dismissed. *See* Edwards Decl. in Supp. of Pl.'s Opp. Mot. Summ. J., Pl.'s Parole Files, Ex. D, 45, ECF No. 28 ("Parole Files"). Plaintiff's bail status was changed on November 15, 2011 to $1.00. *See* Edwards Decl. in Supp. of Pl.'s Opp. Mot. Summ. J., Pl.'s Bail and Release R., Ex. E, 409, ECF No. 28 ("Bail R.").

Plaintiff did not initially post the one dollar bail because parole still had a hold on him. *See* Pl.'s Dep. at 139: 17-19. The hold was lifted on November 23, 2011, *see* Bail R. at 42, 47, but the Department of Corrections did not allow plaintiff to pay the $1 bail until the evening of November 26, 2011 when his paperwork was completed. He was released on November 27, 2014. *See* Pl.'s Dep. at 142:2-11.

### E. Property Recovered from Search of Residence

Plaintiff claims that defendants took property from his residence during a search of his home, pursuant to a search warrant. *See id.* at 119: 1-5. He testified that property was never returned. *See id.* Plaintiff has not attempted to retrieve this property. *See id.* at 175:5-14.

### III.    Standard of Review

Summary Judgment is appropriate only if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 250 (1986). It is warranted when, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Anderson,* 477 U.S. at 247-50, 255.

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995). "Once a movant has demonstrated that no material facts are in dispute, the non-movant must set forth specific facts indicating a genuine issue for trial exists in order to avoid granting summary judgment." *Cifarelli v. Vill. of Babylon,* 93 F.3d 47, 51 (2d Cir. 1996). This evidence may not consist of "mere conclusory allegations, speculations, or conjecture." *Id.*

### IV.    False Arrest

#### A. Law

A section 1983 claim for false arrest requires the same elements as a claim for false arrest under New York law. *See Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). Under New York law, the elements of a false arrest claim are: (1) defendant(s) intended to confine plaintiff; (2)

plaintiff was conscious of confinement; (3) plaintiff did not consent to confinement; and (4) confinement was not privileged. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

### 1. Probable Cause

Probable cause to arrest is a complete defense. *See Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). "Probable cause to arrest exists when the authorities have knowledge or reasonable trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Boyd v. City of New York*, 336 F.3d 72, 75-76 (2d Cir. 2003) (internal quotation marks omitted).

"A false arrest claim turns only on whether probable cause existed at the time of the arrest . . . it is not relevant whether probable cause existed with respect to each individual charge." *See Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).

The "offense for which there is probable cause to arrest" need not be "'closely related' to the offense stated by the arresting officer at the time of the arrest." *Devenpack v. Alford*, 543 U.S. 146 (2004). "The fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Whren v. United States*, 517 U.S. 806, 813 (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978). The key inquiry is whether "the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

### 2. Permissible Evidence Establishing False Arrest

While "the elements of a federal civil rights claim based upon an allegation of a false arrest are the same as the elements of a false arrest claim under New York law," *Mason v.*

*Village of Babylon*, 124 F. Supp. 2d 807, 814 (E.D.N.Y. 2000), state and federal courts permit different evidence to establish the probable cause defense to a false arrest claim. *See Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999); *Ostrover v. City of New York,* 192 A.D.2d 115, 118 (N.Y. App. Div. 1993).

The Court of Appeals for the Second Circuit has held that the "fruit from the poisonous tree doctrine is not available to assist a § 1983 claimant." *Townes v. City of New York*, 176 F.3d 138, 149 (1999). "The lack of probable cause to stop and search does not vitiate the probable cause to arrest." *Id.*

New York state courts, in contrast, have held that "the fruit of an illegal search cannot give . . . rise to probable cause to arrest, and the . . . illegality of the search and seizure is thus conclusive against the defendant on the issue of privilege" for confinement. *Ostrover*, 192 A.D.2d at 118.

### 3. Lawful Search Standards

"The 'plain view' exception to the fourth amendment warrant requirement 'authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity.'" *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (quoting *Illinois v. Andreas*, 463 U.S. 765 (1983)). A police officer may seize evidence in "plain view" if: "(1) the officer's initial intrusion was permissible under the fourth amendment; (2) the discovery of the evidence is 'inadvertent'; and (3) the incriminating nature of the evidence found is 'immediately apparent.'" *United States v. Jenkins*, 876 F.2d 1085, 1088 (2d Cir. 1989).

"A traffic stop based on a reasonable suspicion of a traffic violation comports with the Fourth Amendment." *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009). "When an

11

officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle." *Scopo*, 19 F.3d at 782.

A traffic infraction is "the violation of . . . any law, ordinance, rule or regulation regulating traffic which is not declared . . . to be a misdemeanor or a felony." N.Y.Veh. & Traf.Law § 155 (2012). "For purposes of arrest without a warrant, pursuant to article one hundred forty of the criminal procedure law, a traffic infraction shall be deemed an offense." *Id.*

### 4. Stop in Front of Hydrant

Under the New York City Traffic Rules and Regulations stopping in front of a hydrant after sunset is a violation. *See* Rules of the City of New York, tit. 34, 4-08(e)(2) ("RCNY").
It reads:

> No person shall stop, stand, or park a vehicle in any of the following places . . . within fifteen feet of a fire hydrant, unless otherwise indicated by signs, or parking meters, except that during the period from sunrise to sunset if standing is not otherwise prohibited, the operator of a passenger car may stand the vehicle alongside a fire hydrant provided that the operator remains in the operator's seat ready for immediate operation of the vehicle at all times . . . . *Id.*

### 5. Open Liquor Container

Under New York Vehicle and Traffic Law, "the drinking of alcoholic beverages, or the possession of an open container containing an alcoholic beverage, in a motor vehicle located upon the public highways or right-of-way public highway is prohibited. Any operator or passenger violating this section shall be guilty of a traffic infraction." N.Y. Veh. & Traf. Law § 1227 (2012).

## B. Application of Law to Facts

### 1. Federal False Arrest Claim

Defendants have established that no genuine issue of material fact exists as to plaintiff's section 1983 false arrest claim. Drawing all reasonable inferences in plaintiff's favor, probable cause existed for his arrest. *See Jenkins*, 478 F.3d at 84.

Because the evidence to establish probable cause to defeat a section 1983 false arrest claim can be the fruit of an illegal search, *Townes*,176 F.3d at 149, the only material question is whether defendants had any "reasonable trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense ha[d] been committed by" plaintiff. *See Boyd*, 336 F.3d at 75-76. It does not matter how the officers obtained the information. *See Townes*, 176 F.3d at 149.

Here the officers had probable cause to arrest plaintiff for "possession of an open container" of alcohol "in a motor vehicle located upon [a] public highway." *See* N.Y. Veh. & Traf. Law § 1227 (2012). Plaintiff admits he had such an open-container of alcohol between his feet at the time of the traffic stop. *See* Pl.'s Dep. at 71:16-72:2. He does not dispute that Officer Zummo saw the alcohol between his feet and later recovered the opened bottle from the car. *See* Zummo Tr. at 8:1-2; Vorraro Tr. at 35:10-36:1. Finally, plaintiff does not dispute they were on a public road, South Road, at the time of the stop. *See* Pl's 56.1 at ¶ 18. Officer Zummo had probable cause to make the arrest because he had "reasonable trustworthy information sufficient to warrant a person of reasonable caution" to believe plaintiff was in possession of an open-container of alcohol while he was in a motor vehicle and on a public highway. *See* N.Y. Veh. & Traf. Law § 1227 (2012); *Boyd*, 336 F.3d at 75-76.

13

### 2. State False Arrest Claim

Defendants have established that no genuine issue of material fact exists as to plaintiff's New York false arrest claim. Drawing all reasonable inferences in plaintiff's favor, probable cause existed for his arrest. *See Jenkins*, 478 F.3d at 84.

Because the evidence to establish probable cause to defeat a state false arrest claim must be the fruit of a lawful search, defendants must show their seizure of the incriminating evidence was lawful. *See Ostrover*, 192 A.D.2d at 118.

Relying on the "plain-view" exception to the fourth amendment warrant requirement, defendants can establish that no genuine issue of material fact exists as to the lawfulness of viewing and seizing plaintiff's open-container of alcohol. *See Scopo*, 19 F.3d at 782. All elements of the plain-view requirement are satisfied. *See Jenkins*, 876 F.2d at 1088.

#### a. Initial Intrusion Permissible

No genuine issue of material fact exists as to the first element of the plain-view exception because the "officer's initial intrusion was permissible under the fourth amendment." *See id.*

Defendants give three justifications to establish the initial seizure of the car was lawful: (1) the officers had probable cause to be believe the driver committed a signaling traffic violation by failing to signal as he left the hydrant stop, (2) the officers had reasonable suspicion that the person in the car had been engaged in criminal activity, and (3) the officers had probable cause to believe the driver committed a fire-hydrant parking violation. *See Zummo Tr. at 5:12-14;* Stackhouse Reply in Supp. of Defs.' Mot. for Summ. J., ¶¶ 8-12, ECF No. 29 (Defs.' Reply).

Even if plaintiff's contention that the car was parked at the time of the stop creates a genuine issue of material fact as to the whether or not there was a signaling violation, no genuine

14

issues of material fact exist as to the second and third justifications. *See Stewart*, 551 F.3d at 191; Pl.'s 50H Hr'g at 20:17-24.

Defendants offer evidence and credible testimony, not refuted, that the arresting officers had a description of a car tied to a string of robberies that was similar to the vehicle plaintiff was in prior to his stop and arrest. According to a report written by defendant William Bravo, on October 13, 2011, he personally informed the officers of the "113 Anti-Crime Team," of which arresting Officer Zummo was a member, about the vehicle being used in a string of robberies labeled "Crime Pattern #96." *See* Police Logs at 363. He also made a record in an affidavit dated October 16, 2011, that he had identified the suspected car in Crime Pattern #96 as a tan Honda Accord by reviewing surveillance videotapes of robberies that took place on September 21, 2011 and October 9, 2011. *See id.;* Bravo Affidavit at NYC196. At the hearing on defendants' motion for summary judgment, held July 9, 2014, Officer Zummo testified that during the October 13, 2011 meeting with Detective Bravo, he watched one of the surveillance videos and personally observed the tan or gold Honda Accord as being connected with the robberies. *See* Summ. J. Hr'g Tr. 10:5-7; Zummo Tr. at 5:16-22.

Plaintiff contends that the report and affidavit submitted by Officer Bravo were fabricated and Officer Zummo's testimony is not credible. *See* Edwards Decl. in Supp. of Pl.'s Opp. Mot. Summ. J., 5-7, ECF No. 27 ("Pl.'s Opp."); Summ. J. Hr'g Tr. 10:5-7. Plaintiff does not establish a genuine issue of material fact exists as to their credibility because he does not offer specific, believable facts to support his contention. *See Cifarelli*, 93 F.3d at 51. He merely claims that the fact that the report and affidavit were written after the arrest suggests they were fabricated. He gives no reason to question the authenticity of the records or Officer Zummo's hearing testimony. No genuine issue of material fact exists.

15

Even if the dates of the report and affidavit did raise a question of material fact as to defendants' second basis for arrest, no such question exists as to the third justification for the stop. Plaintiff argues that the car was parked next to a fire hydrant at 6:40 p.m. at the time of the stop. *See* Pl.'s 50H Hr'g at 20:17-24. Plaintiff also asserts it was dark at the time of the stop. *See id.* at 33:19-20. Sunset was at 6:16 p.m. on October 15, 2011. *See* NOAA Data. Under the New York City Traffic Rules and Regulations, a car may not "stop, stand, or park" by a fire hydrant after sunset, meaning the defendants had reasonable suspicion of a traffic infraction and therefore could make a lawful stop. *See* RCNY, tit. 34, 4-08(e)(2); *Stewart*, 551 F.3d at 191.

### b. Inadvertent Discovery

The second element requires that "the discovery of the evidence is 'inadvertent.'" *See Jenkins*, 876 F.2d at 1088. Plaintiff does not dispute that Officer Zummo was talking to the driver of the car during the stop and only looked into the backseat when he saw plaintiff making a motion toward his feet. *See* Zummo Tr. at 7:24-8:1. This constitutes an inadvertent discovery of evidence. *See Jenkins*, 876 F.2d at 1088.

### c. Immediately Apparent

The third element requires that "the incriminating nature of the evidence found is 'immediately apparent.'" *Id.* Plaintiff does not dispute that when Officer Zummo looked into the backseat, he saw an open bottle of what appeared to be alcohol between plaintiff's feet. *See* Pl.'s Dep. at 71:16-72:2. The incriminating nature of this evidence would have been immediately apparent under the New York Vehicle and Traffic Open-Container Law. *See* N.Y. Veh. & Traf. Law § 1227 (2012); *Jenkins*, 876 F.2d at 1088.

Under the plain-view doctrine, Officer Zummo was justified in seizing the open-container of alcohol and arresting plaintiff. *See Jenkins*, 876 F.2d at 1088.

16

Plaintiff's state false arrest claim is dismissed.

## V. Malicious Prosecution

### A. Law

"The elements of . . . malicious prosecution under section 1983 are substantially the same as the elements under New York law. Therefore, the analysis of the state and federal claims is identical." *See Boyd*, 336 F.3d at 75.

In order "to establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendants' actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). "Probable cause is a complete defense to a claim of malicious prosecution in New York." *Id.* (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).

"A presumption of probable cause is created . . . by a grand jury's indictment." *Id.* Plaintiff may rebut and overcome the presumption "with evidence that the indictment was secured by fraud, perjury, the suppression of evidence or other bad faith police conduct." *Id.*

### B. Application of Law to Facts

Plaintiff cannot rebut the presumption of probable cause created by his grand jury indictment for consumption or possession of an alcoholic beverage in a motor vehicle because he cannot establish that the defendants acted in bad faith to secure his indictment. *See id.*

Plaintiff alleges that defendants fabricated reports to ensure that the initial stop of the car was lawful and the evidence they collected from the stop would be admissible before a jury. *See Edwards Decl. in Supp. of Pl.'s Opp. Mot. Summ. J.*, 5-7, ECF No. 27 ("Pl.'s Opp."). Plaintiff

cannot establish that defendants acted in bad faith in this manner because the stop was in fact lawful and therefore any evidence from the stop would have been admissible. *See Boyd,* 336 F.3d at 75.

## VI.  Municipal Liability

### A.  Law

A municipality can be found liable under section 1983 only where the municipality itself causes the constitutional violation at issue. *See Monell v. Department of Social Services,* 436 U.S. 658, 663 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). "To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York,* 490 F.3d 189, 195 (2d Cir. 2007) (internal quotations omitted).

### B.  Application of Law to Facts

Plaintiff argues that the NYPD has a pattern and practice of stopping and detaining African-Americans based on racial profiling in violation of the United States Constitution. He alternatively argues that the NYPD has failed to properly train or supervise officers not to stop and detain African-Americans except upon reasonable suspicion or probable cause. *See* Pl.'s Opp. at ¶¶ 19-21.

Plaintiff's claim fails. He cannot show that the seizure of his car and subsequent search was unlawful. Because he has not suffered an injury resulting from a constitutional violation, plaintiff cannot establish municipal liability. *See Monell,* 436 U.S. at 663. Plaintiff's municipal liability claim fails as a matter of law.

## VII. Intentional Infliction of Emotional Distress

### A. Law

To establish intentional infliction of emotional distress in New York, plaintiff must prove: (1) extreme and outrageous conduct, (2) intent to cause emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *Howell v. NY. PostCo., Inc.*, 81 N.Y.2d 115, 121 (1993).

### B. Application of Law to Facts

Plaintiff's intentional infliction of emotional distress claim fails. He cannot establish that the defendants acted unlawfully or in an extreme and outrageous manner. *Howell*, 81 N.Y.2d at 115.

## VIII. Negligent Infliction of Emotional Distress Claims

### A. Law

To establish negligent infliction of emotional distress in New York, plaintiff must prove: (1) extreme and outrageous conduct, (2) negligence in causing the emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *See Goldstein v. Massachusetts Mut. Life Ins. Co.*, 60 A.D.3d 506, 508 (2009); *Howell*, 81 N.Y.2d at 115.

### B. Application of Law to Facts

Plaintiff's negligent infliction of emotional distress claim fails. He cannot establish that the defendants acted unlawfully or in an extreme and outrageous manner. *See Howell*, 81 N.Y.2d at 115.

## IX.  Due Process Claim for Deprivation of Food and Water as a Pretrial Detainee

### A.  Law

The "constitutional standard by which the legality of conditions of confinement for pretrial detainees is to be measured . . . is whether the conditions amount to 'punishment' without due process in violation of the Fourteenth Amendment." *Rush v. Astacio*, 159 F.3d 1348, 1348 (2d Cir. 1998) (quoting *Lareau v. Manson*, 651 F.2d 96, 102 (2d Cir. 1981)).

"Not every disability imposed during pretrial detention amounts to punishment in a constitutional sense.  The issue is whether the disability is 'imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose." *Webster v. City of New York*, 333 F. Supp. 2d 184, 200 (S.D.N.Y. 2004).

"Absent a showing of express intent to punish, the determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it." *Rush,* 159 F.3d at 1348.

The Court of Appeals for the Second Circuit has held that in the absence of an intent to punish, denying a pretrial detainee food for twelve hours does not violate the plaintiff's due process right. *Rush*, 159 F.3d at 1348.  The court explained that "there are legitimate governmental purposes that justify not feeding every detainee upon arrival at a police station . . . ." *Id.* at 2; *see also Felmine v. City of New York*, No. 09-CV-3768 (CBA)( JO), 2011 WL 4543268 (E.D.N.Y. Sept. 29, 2011) (granting summary judgment for defendant where plaintiff claimed he was deprived of food for a day and a half after his arrest).

**B. Application of Law to Facts**

Plaintiff alleges he was held in Precinct 113 for approximately 12 hours without receiving food. He does not dispute that he had access to a water fountain. *See* Pl.'s Dep. at 90:23-25. He also alleges he spent approximately 24 hours in Precinct 109 and only received a moldy piece of pizza while he was there. *See* Pl.'s Dep. at 105:17-106:1. Defendants provide official documentation from Precinct 109 that states plaintiff only spent 4.5 hours there before going to Central Booking. *See* Command Log.

Plaintiff offers no specific facts to contest the credibility of the contemporaneous Precinct Command Log, which states plaintiff was only held in Precinct 109 for 4.5 hours rather than 24 hours. Not receiving food as a pre-trial detainee for 4.5 hours in Precinct 109, or even 12 hours overnight in Precinct 113, does not constitute punishment of a pre-trial detainee. This amount of time is not excessive in the context of the "initial bustle of processing and arraigning an arrestee." *See Felmine v. City of New York*, No. 09-CV-3768 (CBA)(JO), 2011 WL 4543268 (E.D.N.Y. Sept. 29, 2011).

Plaintiff's claim fails.

**X.    Intentional Conversion Claim**

**A. Law**

There is no section 1983 claim against the state actor for deprivation of property "so long as the state provides an adequate post-deprivation remedy and the deprivation was the result of a 'random and unauthorized' act." *Cantave v. N.Y. City Police Officers*, No. 09-CV-2226 (CBA) (LB), 2011 WL 1239895, at *7 (E.D.N.Y. Mar. 28, 2011).

## B. Application of Law to Facts

Plaintiff does not contest that there was an adequate remedy or that the act was random or unauthorized. *See id.* There is no genuine issue of material fact. The claim fails.

## XI. False Imprisonment – Wrongful Confinement

Plaintiff's false imprisonment claim against unknown Department of Corrections Officers or Employees is dismissed for failing to name a defendant. *See Pollard v. Does*, 452 F. App'x 38, 40 (2d Cir. 2011). Plaintiff was given a full opportunity for discovery. *See Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997). He did not make any "attempt to ascertain the identities of the [unknown defendants]" during the summary judgment hearing on July 9, 2014. *Pollard*, 452 App'x at 40. The claim is dismissed.

Even if there had been named defendants, the Department of Corrections' defendants were improperly joined. *See* Fed. R. Civ. P. 20(a)(2); Fed. R. Civ. P. 21. The false imprisonment claim against Department of Corrections employees stems from plaintiff being re-arrested after he had been released from Central Booking following his October 15, 2011 arrest. *See* Pl.'s Dep. at 122:7-8. He was arrested the second time in October 2011 because he violated parole conditions from an unrelated 2002 robbery conviction. *See id.* at 34:12-20. Associating with Thomas, who was also a felon, and consuming alcohol in the car on October 15, 2011 violated plaintiff's parole conditions and led to his second arrest. *See* Pl.'s Dep. at 33:22-34:2. Plaintiff has not asserted any relation between the alleged unlawful practices of the Department of Corrections in wrongfully confining him for four days and the alleged misconduct of the other defendants stemming from the October 15, 2011 arrest. *See Nassau Cnty. Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151, 1154 (2d Cir. 1974).

The claim against the Department of Corrections is dismissed.

## XII.  Conclusion

Defendants' summary judgment motion is granted.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated:  July 22, 2014
Brooklyn, New York